UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KIAIRRA LUKE individually and as the parent
and natural guardian of N.R.S. and L.K.J.,

                                        Plaintiffs,

                    -against-

NEW YORK CITY ADMINISTRATION FOR
CHILDREN SERVICES; LENNIN LLUVERES
in his individual and official capacity; TAHISHA
FONTAINE LONGWORTH in her individual
and official capacity, and ZEENA ALLEY in her
individual and official capacity,

                                        Defendants.

1:20-CV-7504 (LLS)

ORDER OF DISMISSAL

---

LOUIS L. STANTON, United States District Judge:

Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging that the defendants violated her and her minor children's federal constitutional rights. She asserts claims on her own behalf and on behalf of her minor children, N.R.S. and L.K.J., and she seeks damages. She sues (1) the New York City Administration for Children's Services ("ACS"), (2) Lennin Lluveres, an ACS child protective specialist, (3) Tahisha Fontaine Longworth, an ACS child protective specialist, and (4) Zenna Alley (or Zeena Alley, or Alley Zenna, or Alley Zeena ("Alley")), an ACS child protective supervisor.[1] By order dated October 9, 2020, the court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* ("IFP"). For the reasons discussed below, the Court dismisses this action.

---

[1] Plaintiff sues the individual defendants in their official and individual capacities.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-

2

pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff, who resides with her children in the Bronx, makes the following allegations: In December 2016, N.R.S. was attending P.S. 94 in the Bronx. A school official reported to the New York State Central Register of Child Abuse and Maltreatment ("SCR") that N.R.S. had been absent from school 25 times and late 18 times. The official further reported that Plaintiff was "aware of the child's attendance issues but [did] not ma[k]e adequate efforts to change her behavior." (ECF 1, at 2.) The report was transferred by SCR to ACS.[2]

On December 9, 2016, Lluveres went to P.S. 94; Lluveres or another ACS official questioned N.R.S. without informing Plaintiff and without Plaintiff's consent.[3] Later that day, Lluveres visited Plaintiff at her home to speak about N.R.S. "regarding 'Educational Neglect.'" (*Id.* at 8.) But Plaintiff would not allow Lluveres to enter; she spoke to him in her apartment building's hallway. Lluveres did not tell Plaintiff that he had spoken to N.R.S. earlier that day. Plaintiff "has had several encounters with the [the] CITY in the past which were all deemed unfounded," and she "was frustrated to he[a]r that a new case had been open[ed] against her again." (*Id.* at 8-9) (emphasis in original).

Three days later, on December 12, 2016, the school official who made the SCR report called Lluveres and told him about N.R.S.'s absences and tardiness, and that school officials had called Plaintiff, sent letters to her, and attempted to visit her home, but that Plaintiff had not

---

[2] Plaintiff refers to ACS as "Child Protective Services" or "CPS." (ECF 1, at 3.)

[3] Plaintiff alleges that Lluveres went to P.S. 94 to speak to a school official, and that "CPS" questioned N.R.S. (ECF 1, at 4.)

responded. Another official told Lluveres that N.R.S. was failing academically because of her absences, and that the official had visited Plaintiff at her home in November 2016, and spoke to her about the absences, but that N.R.S.'s absences continued.

The next day, December 13, 2016, Lluveres visited Plaintiff's home again. Plaintiff let Lluveres into her home and they discussed N.R.S.'s absences and tardiness. Plaintiff told Lluveres that she was often unable to bring N.R.S. to school because of the pain Plaintiff suffers from as a result of being struck by a vehicle two years earlier. She also stated that she was new to her neighborhood, and did not know people there who could help her. She further stated that the school had denied N.R.S. bus service. Lluveres told her that those were not valid excuses for N.R.S.'s absences, and Plaintiff agreed to improve N.R.S.'s school attendance. They also discussed N.R.S.'s biological father, who did not live with Plaintiff and the children, as well as L.K.J's biological father, who was living with them. Plaintiff told Lluveres that she believed that L.K.J.'s biological father was suffering from mental-health issues. Lluveres again did not mention that he had previously spoken to N.R.S.

On February 7, 2017, Lluveres questioned N.R.S. at P.S. 94 without informing Plaintiff and without Plaintiff's consent. Lluveres also spoke to school officials, who informed him that N.R.S.'s attendance had improved, as had her academic performance. On that same date, however, Alley entered notes into ACS records stating that the allegations about Plaintiff's educational neglect and inadequate guardianship applied to both of Plaintiff's children. ACS determined that it "had some '***credible evidence***' to support that [Plaintiff] maltreated or abused N.R.S. and L.K.J." (*Id.* at 13) (emphasis in original). Alley then scheduled a "Family Meeting" to address safety concerns. (*Id.*) On or about April 28, 2017, Longworth went to P.S. 94 and questioned N.R.S. without notifying Plaintiff and without Plaintiff's consent.

4

"Alley authorized the initial SCR report to be found as indicated even though she did not have any reasonable ground to do so." (ECF 1-1, at 1.) "Alley and Lluveres . . . reported to the SCR that [Plaintiff] was neglecting N.R.S. of an education," even after N.R.S.'s attendance and academic performance had improved. (*Id.* at 2.) They also "reported to the SCR that [Plaintiff] was allowing [L.K.J.'s biological father] to be around her children untreated from mental health . . . and that le[d] to [Plaintiff's] being on the SCR list as an inadequate guardian and [to] a Family [C]ourt case." (*Id.*) Alley and Lluveres further reported to SCR that Plaintiff was a victim of domestic violence. Police visited Plaintiff and her children at late hours. And ACS officials visited them twice per week, and threatened to remove N.R.S and L.K.J. But on March 10, 2018, "[t]he Family Court case against [Plaintiff] involving N.R.S. and L.K.J. was dismissed." (*Id.* at 1.) N.R.S. and L.K.J., however, "remain on the [SCR] despite [Plaintiff's] legally fighting to take them off." (ECF 1, at 14.)

Plaintiff asserts that the defendants have maliciously prosecuted her and have violated her constitutional right of family integrity. (ECF 1-1, at 1-2.)

## DISCUSSION

### A.      Claims on behalf of N.R.S. and L.K.J.

The Court must dismiss Plaintiff's claims that she brings on behalf of N.R.S. and L.K.J. The provision governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing [her]self." *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted). Generally, a non-attorney parent cannot bring an action on behalf of his or her minor children in federal court without counsel. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). And

"because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to [her]." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Cheung v. Youth Orch. Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[I]t is not in the interests of minors . . . that they be represented by non-attorneys.").

Plaintiff has alleged no facts suggesting that she is an attorney. She cannot, therefore, assert any claims on behalf of other individuals, including N.R.S. and L.K.J. The Court therefore dismisses Plaintiff's claims that she asserts on behalf of N.R.S. and L.K.J. without prejudice.

**B.      Claims against ACS, and against the individual defendants in their official capacities**

The Court must dismiss Plaintiff's claims against ACS, as well as her claims against the individual defendants in their official capacities as ACS employees. ACS, as an agency of the City of New York, is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Friedman v. N.Y.C. Admin. For Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (summary order) (ACS is not a suable entity); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). And "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."). Accordingly, the Court dismisses Plaintiff's claims against ACS, as well as her claims against the

individual defendants in their official capacities as ACS employees, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

But in light of Plaintiff's *pro se* status and clear intention to assert claims against the City of New York (*see* ECF 1, at 2), the Court construes Plaintiff's complaint as asserting claims against the City of New York. When a plaintiff sues a municipality, such as the City of New York, under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under § 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts suggesting that a policy, custom, or practice of the City of New York caused a violation of her constitutional rights. The Court therefore dismisses Plaintiff's claims under § 1983 against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

C.      **Substantive due process**

The substantive component of the Due Process Clause of the Fourteenth Amendment

"provides heightened protection against government interference with certain fundamental rights

and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Among these rights

and liberty interests are:

> the right of [a] family to remain together without the coercive interference of the
> awesome power of the state. This right to the preservation of family integrity
> encompasses the reciprocal rights of both parent and children. It is the interest of
> the parent in the companionship, care, custody and management of his or her
> children, and of the children in not being dislocated from the emotional
> attachments that derive from the intimacy of daily association.

*Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (internal quotation marks and citations

omitted); *see Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (noting that families have

"a substantive right under the Due Process Clause to remain together without the coercive

interference of the awesome power of the state") (internal quotation marks and citation omitted).

Plaintiff's claims arise from the individual defendants' investigation of allegations of

child neglect and abuse made against Plaintiff, and their prosecution of a Family Court

proceeding against her regarding those allegations. Plaintiff's claims therefore involve her

substantive due process right of family integrity.

1.      **Malicious prosecution**

The Court must dismiss Plaintiff's claims of malicious prosecution under § 1983 against

the individual defendants, in their individual capacities. Plaintiff cannot assert such a claim when

it arises from allegations of a violation of the substantive due process right of family integrity or,

for that matter, a violation of any other substantive due process right.. *See Singer v. Fulton Cnty.*

*Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) ("[T]he Fourteenth Amendment right to substantive due

process will not support a federal claim for malicious prosecution."); *see also id.* at 115-16 ("[A]

claim of malicious prosecution may not be brought as a substantive due process claim . . . . Once a plaintiff presents a claim of malicious prosecution under § 1983, the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment."). The Court therefore dismisses Plaintiff's claims of malicious prosecution under § 1983 against the individual defendants, in their individual capacities, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### 2.    Family integrity

The Court must also dismiss Plaintiff's claims under § 1983 against the individual defendants, in their individual capacities, in which Plaintiff asserts that they violated her substantive due process right of family integrity. Plaintiff fails to state a claim that any of the individual defendants deprived her of her liberty interest in her family's integrity – her interest in the care, custody, or management of her children, *see Duchesne*, 566 F.2d at 825 – because she makes no allegation that suggests that any of those defendants removed her children from her, *see Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275-76 (2d Cir. 2011) (While a school principal's "call to [the state's children and family services agency] and the resulting demands and threats from [that agency] to the parents may have been stressful or even infuriating, . . . they did not result in even a temporary loss of custody, let alone a wholesale relinquishment of rights. The parents maintained custody over [the child] during his entire (concededly coerced) psychiatric evaluation. Where there is no actual loss of custody, no substantive due process claim can lie.") (internal quotation marks and citation omitted); *Phillips v. Cnty of Orange*, 894 F. Supp. 2d 345, 380 (S.D.N.Y. 2012) ("In light of the Second Circuit's holding in *Cox,* Plaintiffs have failed to state a viable claim that any of the actions taken by Defendants violated their

9

substantive due process rights, for the simple reason that Plaintiffs never lost custody of [their child].").

Plaintiff also fails to state a claim of a violation of her right of family integrity with regard to the individual defendants' investigation of her. Courts have held that a parent "has no right to be free from [an] ACS investigation." *Watkins-El v. Dep't of Educ.*, No. 16-CV-2256, 2016 WL 5867048, at *4 (E.D.N.Y. Oct. 7, 2016); *e.g.*, *Phillips*, 894 F. Supp. 2d at 378-79 (quoting *Doe v. Heck*, 327 F.3d 492, 520 (7th Cir. 2003)); *Villanueva v. City of New York*, No. 08-CV-8793, 2010 WL 1654162, at *7 (S.D.N.Y. Apr. 14, 2010).

Plaintiff's allegations that the defendants interviewed N.R.S. without notifying Plaintiff or obtaining Plaintiff's consent does not suggest that her right of family integrity was violated. Courts have held that those types of interviews are not illegal. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 216 (S.D.N.Y. 2013) (collecting cases); *Phillips*, 894 F. Supp. 2d at 376 ("[T]he Court has found no authority, within the Second Circuit or without, to support the Parent Plaintiffs' allegations that the right to care, custody, and management includes the parents' right to teach their children not to speak to strangers . . . about their intimate home life and their private parts, or that this right includes the parents' right to be present to offer comfort and consolation to their child when being questioned. Put another way, there is no authority to substantiate the Parent Plaintiffs' claim that the in-school interview of [their child], conducted after [officials] received a call alleging that [the child] was the victim of sexual abuse, violates their liberty interest in her care, custody, and management.") (internal quotation marks and citation omitted); *Cornigans v. Mark Country Day Sch.*, No. 03-CV-1414, 2006 WL 3950335, at *6 (E.D.N.Y. July 12, 2006) ("The plaintiffs have not identified any case holding that interviewing a child at her school in connection with an abuse investigation without the

parents' consent or notice constitutes a removal or other interference triggering due process interests, and the court has found none. On the contrary, the relevant caselaw supports the conclusion that no constitutional right was implicated and no procedural due process violation occurred."), *report & recommendation adopted as modified on other grounds sub nom.*, *J.C. v. Mark Country Day Sch.*, 2007 WL 201163 (E.D.N.Y. Jan. 23, 2007); *Fowler v. Robinson*, No. 94-CV-0836, 1996 WL 67994, at *16 (N.D.N.Y. Feb. 15, 1996) ("Although defendants never removed the . . . children from their home, . . . even if defendants' removing the . . . children from their classrooms in order to interview them on school grounds constituted a deprivation of custody, it was not sufficiently significant to implicate the constitutionally protected right of family integrity.").

The Court therefore dismisses Plaintiff's claims against the individual defendants, in their individual capacities, that they violated Plaintiff's substantive due process right of family integrity, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## LEAVE TO AMEND IS DENIED

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to file an amended complaint.

## CONCLUSION

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket. The Court dismisses this action.

The Court dismisses Plaintiff's claims brought on behalf of her minor children, N.R.S. and L.K.J., without prejudice.

The Court dismisses the remainder of Plaintiff's claims for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

SO ORDERED.

Dated:   November 13, 2020
         New York, New York

                                           _Louis L. Stanton_
                                           Louis L. Stanton
                                           U.S.D.J.